Frank J. **GISSI**, Plaintiff,

v.

Michael J. **CODD**, Police Commissioner of the City of New York, et al., Defendants.

No. 74-C-640.

United States District Court, E. D. New York.

May 20, 1974.

Harold B. Foner, Brooklyn, N. Y. and Ira Leitel, New York City, of counsel, for plaintiff.

Adrian P. Burke, Corp. Counsel of the City of New York, New York City, by Gayle Redford, Asst. Corp. Counsel, New York City, and Maurice Neco, Deputy Police Commissioner for Legal Affairs, of counsel, for defendants.

MEMORANDUM

JUDD, District Judge.

Plaintiff has moved for a preliminary injunction against the enforcement of Police Department rules which have been applied so as to require him to remain in his apartment while he is on sick leave, except during hours specified by the District Surgeon and on occasions when the Central Sick Desk authorizes him to be absent. A hearing was held at which the plaintiff and Captain Francis C. Hall of the Police Department were heard as witnesses.

*Facts*

According to the affidavits and testimony, plaintiff joined the Police Department in 1966 and was injured in a collision on September 18, 1970. In January 1971 plaintiff was placed on restricted duty. In August 1971 he was placed on sick report and has remained so since that time.

The Police Department provides unlimited sick leave on full pay.

In 1973 plaintiff was suspended and brought up on Departmental charges for leaving his home on 33 occasions without permission. The surveillance reports showed, among other things, that on December 27, 1972 the plaintiff was not at home when surveillance officers arrived at 2:45 p. m., that he came home by car at 3:40, left at 4:20, went to the R.D.R. Collision Yard and stayed there until 4:35 when he left and surveillance was broken. His automobile was again observed at home at 5:15. He left at 6:00 o'clock by car and drove to Pan Am Motor Inn on Queens Boulevard, where his car remained parked when observation was discontinued at 2:00 a. m. the next day.

On January 3, 1973 he left his residence at 5:25 p. m., drove to a bakery, and then to an apartment building in which his father apparently lives. His father and a woman left the building at 5:55. At 6:35, plaintiff drove to a house at Graves End Neck, entered the house, exited with his father and came

back home at 7:40, after driving his father home.

On April 25, 1973, he left his residence at 11:00 a. m. carrying an attache case, entered a dentist's office, went from there to a Cadillac service, from there to the Advance Process Spray Company, from there to a luncheonette on McDonald Avenue, from there to the Regency Carting Service, from there to the side entrance of a building at Graves End Neck Road, from there to a store on Avenue U, from there to a toy and card store on Avenue U, and from there to his residence, arriving back at 3:00 p. m.

On May 1, 1973, he was observed to leave his residence at 9:15, go to a rental office, a cleaner, a luncheonette, a factory next door the the Regency Carting Service, a music shop, a cleaner, an A & P, the Continental Coiffeur, and then drive to a building at 74–10 Grand Avenue with another man, who at about 2:05 p. m. helped him bring out a big box and put it in the trunk of his car. He then stood in front of a barber shop on Queens Boulevard talking with several men, walked to a luncheonette, then to a tire shop, and then to the Alton's Police Equipment Store on Schenectady Avenue. He arrived back at his home at 4:05 p. m., where he helped his friend carry the box from the car, into his residence.

After his departmental trial, plaintiff pleaded guilty to violating the rules on three days, was fined, and was reinstated to the Department in August 1973.

At the time of his reinstatement, plaintiff was offered any type of restricted duty, with an opportunity to choose a location within walking distance of his home. He refused because he pleaded he was too sick.

Plaintiff has applied for a disability pension. The Police Department surgeon found that he was able to work and had no physical or neurological disability. He was directed to return to work in February 1974. He reported one night at midnight, but left at 4:00 a. m., saying that he was sick as a result of medication which he had been taking. Two police sergeants went to his home, checked his medicine closet, and took a urine sample which turned out to be negative for any medication. Plaintiff has made no further attempt to work. His disability pension application has been disapproved by the Medical Board Police Pension Fund.

No evidence was offered at the hearing concerning any existing medical or psychological ailment. The court observed that the plaintiff moved with some difficulty and held his head at an angle. Plaintiff asserts that he has been drinking because of a marital problem, which he attributes to the disciplinary proceeding brought by the Police Department.

The Form M.B. 5 issued to plaintiff on August 24, 1973, entitled "Permission to Leave Residence While on Sick Report" permits him to leave for meals, from 9:00 to 10:00 a. m., 12:00 to 1:00 p. m., and 5:00 to 6:00 p. m. (later amended to 6:00 to 7:00 p. m.) daily. He takes his meals with his parents, who live nearby.

Permission to leave at other times must be obtained from the Central Sick Desk.

Plaintiff is especially concerned with the need to visit attorneys in his matrimonial action and his pension and civil rights matters, and to see his children under a court decree which permits him to do so on alternate Sundays and two weeks of school vacation. They live with their mother on Staten Island. Plaintiff cannot go there and return in an hour.

Permission to visit his children has often been denied by the Central Sick Desk, and efforts to reach Captain Hall for review of the Sick Desk decisions have met with frequent frustration. The only standards for the granting of permission from the Sick Desk are that the decision should be "reasonable" and is subject to review. In practice, the decisions are made at the whim of the par-

ticular sergeant on the Central Sick Desk.

### Discussion

The regulation under attack states that

A member of the force on sick report shall not leave his residence or place of confinement except by permission of his district surgeon or for the purpose of visiting a police surgeon.

New York City Police Department Rules and Regulations § 22/2.1.

The New York City Police Department Patrol Guide describing the duties of a policeman, states:

When sickness or injury would prevent proper performance of duty:

Remain at residence or other authorized location.

(a) Advise Sick Desk of any change of location.

Jurisdiction is asserted as a civil rights action for declaratory judgment and injunctive relief. 42 U.S.C. § 1983; 28 U.S.C. §§ 1343(3), (4), 2201, 2202.

■ Although plaintiff attacks the Police Department procedure as keeping him in confinement, the case is not subject to the restrictions on habeas corpus imposed by Preiser v. Rodriguez, 411 U. S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), since the plaintiff is not confined pursuant to a judgment of a state court. Therefore, 28 U.S.C. § 2254(b) concerning exhaustion of state remedies does not apply.

■ The fact that plaintiff is subject to disciplinary action, including possible fine or dismissal, for exercising his normal right to travel, creates a justiciable claim. The restrictions, made pursuant to Police Department rules and guides, are clearly state action within the purview of 42 U.S.C. § 1983.

■ It is not necessary on this motion to determine the extent to which the Police Department can constitutionally confine a sick officer to his home.

Some restrictions on the activity of a man on sick leave are justifiable in order to prevent malingering or abuse. The Police Department should be in a position to verify whether plaintiff's absence from his residence is for a legitimate purpose and consistent with his claim of total disability to perform even restricted duty. In this case, a certain amount of suspicion is justified because of plaintiff's prior violation of the rules, and his unwillingness to accept restricted duty. Plaintiff's situation is in some respect like that of the policeman in Charron v. Secretary of the Dept. of HEW, 73–C–1412 (E.D.N.Y., April 15, 1974), who applied for Social Security disability benefits, but refused to accept any job for fear of losing his Police Department disability pension. Plaintiff may be seeking to protect any rights he has to appeal the denial of his disability pension, by refusing to undertake restricted duty.

Nevertheless, plaintiff should not be subject to arbitrary restrictions on his freedom of movement. It may be argued that he can terminate his restrictions at any time by returning to work on a restricted basis, but that is not a justification for arbitrarily depriving him of the right to visit his children. Even though someone else could bring the children to his apartment, that imposes an unnecessary burden on third parties.

Lord Acton's famous dictum that "power tends to corrupt" poses a real risk of power being abused when a working police sergeant is given power to regulate the comings and goings of a non-working policeman, with no other standard than to be "reasonable."

■ Under the standards applicable to a preliminary injunction, Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969), plaintiff both has some likelihood of partial success on the merits, and is suffering a continuing irreparable hardship. Moreover, partially ac-

commodating itself to plaintiff's requirements imposes no great hardship on the Police Department.

■ Although defendants assert that they have not denied any requests for leave to visit plaintiff's children since the hearing was held, this is not sufficient to defeat the right to an injunction to prevent future arbitrary applicaton of the Police Department rules.

Plaintiff should have a right to visit his attorney and doctor when necessary, and to visit his children at least once every two weeks for the period permitted by the state court order, provided that he informs the Police Department Central Sick Desk 24 hours in advance, so that the Department can verify whether his absence from the residence is for the proposed purpose. An appropriate preliminary injunction should be issued, without the requirement of any bond.