**David K. RUHLMAN**

v.

**James D. BARGER, Patrick J. Hankinson and Robert B. Gorman.**

**Civ. A. No. 76–73 (Erie).**

United States District Court,
W. D. Pennsylvania.

Dec. 30, 1976.

H. William White, Franklin, Pa., for plaintiff.

Frederick R. Nene, Pittsburgh, Pa., and Robert P. Kane, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

KNOX, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1985 seeking a declaratory judgment, damages, and injunctive relief. The plaintiff is David K. Ruhlman, a Sergeant in the Pennsylvania State Police, presently assigned to the Erie Barracks. The defendants are Colonel James D. Barger, Commissioner of the Pennsylvania State Police, Captain Patrick J. Hankinson of the State Police in Erie, and Lieutenant Robert B. Gorman of the State Police in Franklin, Pa. The court has jurisdiction of this action under 28 U.S.C. § 1343 and 42 U.S.C. § 1981.

The matter is now before the court on defendants' motion to dismiss plaintiff's amended complaint. The parties have submitted briefs on the question and the court heard the parties' oral arguments on September 23, 1976.

On February 19, 1975 plaintiff was transferred from the Franklin, Pa. substation of the State Police to the Erie Barracks, allegedly for punitive reasons. Plaintiff charges in his amended complaint that defendants conspired to impose this transfer on him as a form of punishment because he had (1) opposed the use of a quota system for arrests and traffic citations at the Franklin substation (2) joined with other troopers at Franklin in revealing the quota system to a local newspaper reporter and (3) refused to refrain from gambling with other police personnel at certain social gatherings. The order transferring plaintiff to Erie, issued February 19, 1975, became effective on March 6, 1975.

Plaintiff claims that the defendants' actions in planning and issuing the transfer order violated his rights of free speech and assembly under the First Amendment, and denied him due process of law under the Fourteenth Amendment. The amended complaint also alleges that under State Police Regulations a trooper is entitled to administrative due process whenever punishment is imposed, and that defendants here used the transfer as a "subterfuge" for punishment, in order to circumvent plaintiff's due process rights under the Regulations.

I

■ Initially, the court notes that defendants' actions in issuing any transfer order, in the course of their duties, would constitute conduct "under color of state law" within the meaning of 42 U.S.C. § 1983. Thus, the necessary state action is present in this case alleging deprivation of plaintiff's constitutional rights.

In ruling on defendants' motion to dismiss, the court adopts the well-accepted rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Therefore, we must consider all facts alleged in the complaint and every reasonable inference to be derived therefrom in the light most favorable to plaintiff. For the reasons stated below, the defendants' motion will be denied.

II

A. Deprivation of Liberty

The first issue presented is whether plaintiff's transfer constituted a deprivation of protected free speech in violation of the First Amendment. We must examine this claim in light of the Supreme Court's opinion in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and subsequent cases.

*Pickering* involved a high school teacher who sent a letter to the local newspaper criticizing the way in which the superintendent and Board of Education had handled certain bond proposals. The Board

dismissed Pickering, and at a hearing found that some of the statements in the letter were false and that the letter was detrimental to the best interests of the school district. The Supreme Court ultimately held that the dismissal violated Pickering's First Amendment rights. The Court noted that the problem in any case involving the free speech rights of State employees is to "arrive at a balance between the interests of the (employee), as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811, 817. *Pickering* emphasized two factors to be considered in determining whether an employee's statements are protected free speech:

(1) whether the statements are concerned with a matter of legitimate public interest

(2) whether the statements will undermine important employment relationships.

The statements are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here. Appellant's employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning. *Pickering v. Board of Education,* 391 U.S. 563, 569–70, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811, 818 (1968).

See also *Madison Joint School Dist. v. Wis. Emp. Relations Comm.,* 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976).

In *Roseman v. Indiana University,* 382 F.Supp. 1328 (W.D.Pa.1974), aff'd, 520 F.2d 1364 (3d Cir. 1975), cert. denied, 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 329 (1976), Roseman, an associate professor of foreign languages at the University, made serious accusations against the acting chairman of her department's teaching staff. One week later, the University decided not to renew her teaching contract. This court held that Roseman's statements were not protected speech under the First Amendment. Unlike the letter in *Pickering,* her attacks upon the acting department chairman were not concerned with any issue of public importance. Also, we noted that:

In the instant case, plaintiff's attacks upon Faust's integrity in a faculty meeting would undoubtedly have the effect of interfering with harmonious relationships with plaintiff's superiors and co-workers, and we therefore hold that if plaintiff's remarks in any way contributed to her discharge, they did not constitute protected free speech. *Roseman v. Hassler,* 382 F.Supp. 1328, 1339 (W.D.Pa.1974).

In the recent case of *Sprague v. Fitzpatrick,* 546 F.2d 560 (3d Cir. 1976) the Third Circuit again applied the guidelines set forth in *Pickering* and *Roseman.* Here, Richard Sprague, an Assistant District Attorney in Philadelphia, was discharged for remarks he made in a newspaper interview to the effect that earlier statements by his superior, the District Attorney, were untrue. The Third Circuit upheld the dismissal of Sprague's claim that the discharge was a deprivation of free speech. While Sprague's interview did deal with matters of "grave public import", his statements that his superior had not told the truth completely undermined any effective working relationship. At 565.

█ In the case at hand, plaintiff Ruhlman alleges that a quota system was begun at the Franklin Barracks in June or July of 1974 by the Traffic Sergeant, Henry T. Lorent. Other troopers at the Barracks approached the plaintiff and solicited his help in opposing enforcement of the quota system. Plaintiff claims that he brought the matter to the attention of the Station Commander, defendant Robert Gorman, and that Gorman assured him that he would direct Sergeant Lorent to discontinue the practice. The quota system allegedly continued until February 1975, when plaintiff and other troopers revealed the matter to the local newspaper. Subsequently, on

February 19, 1975, the order transferring plaintiff to Erie was issued.

Applying the principles outlined in *Pickering* and *Roseman* to these facts, the court finds that plaintiff has stated a valid claim for deprivation of protected free speech. First, the existence of a quota system for traffic arrests at a State Police Barracks is a matter of legitimate public interest. Second, taking the facts alleged in the light most favorable to plaintiff, *Conley v. Gibson,* supra, there is no indication that the plaintiff's remarks to the newspaper regarding the quota system were directly aimed against co-workers or an immediate superior. Thus, although plaintiff may have been dealing with a controversial matter, his statements would not have the kind of disruptive impact on close working relationships that occurred in *Roseman* and *Sprague.*

The court notes that although plaintiff has been transferred from his home in Franklin to Erie, he has not been either demoted or discharged. However, because plaintiff has allegedly been subject to disciplinary action for his exercise of protected speech, he has stated a justiciable claim under 42 U.S.C. § 1983. See *Gissi v. Codd,* 391 F.Supp. 1333, 1336 (E.D.N.Y.1974).

### B. Deprivation of Property

Plaintiff claims that the transfer to Erie, issued without a hearing, denied him due process of law under the Fourteenth Amendment. In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Court noted that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556. Thus, in evaluating this aspect of plaintiff's claim, we must determine whether the transfer to Erie deprived him of a property interest within the protection of the Fourteenth Amendment.

*Roth* is the leading Supreme Court decision setting forth the elements of a property interest protected by procedural due process. There, the court stated:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972).

Further, *Roth* noted that there must be a state law basis for a legitimate claim of entitlement to a property right.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

■ Under the guidelines established in *Roth,* we find that the Pennsylvania State Police Field Regulations create a property right in the plaintiff not to be transferred as punishment. Paragraph D, Pennsylvania State Police Regulation FR 3–3, entitled "Discipline", specifically provides that "[t]he use of transfer as a means of punishment is prohibited" and that a "transfer *will not* be used as a subterfuge to impose punishment.":

D. Restrictions: The punishment mandated in each disciplinary level shall be the *exclusive* means by which a member may be disciplined for an offense. The use of transfer as a means of punishment is prohibited.

However, a member may be transferred by the Deputy Commissioner, on an INTRA– Regional basis for the good of the Department or the Member, if the Member's action has:

1. Substantially jeopardized or damaged the reputation and/or image of the Department, or the Member;

2. Caused or created a situation which substantially impairs the overall working relationship of the function to which the Member is assigned.

In such cases, the damage to the Department's reputation and/or image, or the impairment of the working relationship *must* be capable of being substantiated, and said transfer WILL NOT be used as a subterfuge to impose punishment.

This regulation provides the basis in state law within the meaning of *Roth* for plaintiff's claim that a property right is implicated in his transfer.

■ Thus, taking as true the facts alleged in plaintiff's complaint, the transfer in this case would violate specific provisions of the State Police Field Regulations and constitute a deprivation of property within the meaning of the Fourteenth Amendment. Since at the time in question there was no applicable grievance procedure available to plaintiff nor any other means of redress, the court's opinion is that plaintiff has stated a viable claim for denial of due process of law under the Fourteenth Amendment.

This court is aware of the two recent Supreme Court decisions *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) and *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) which caution the federal courts against becoming involved in the day to day affairs of police departments. However, those decisions are not controlling here. In *Bishop,* the Court found that the plaintiff policeman did not have a basis in state law for his claim to a property interest in continued employment. Thus, he was not constitutionally entitled to a hearing upon termination. In this case, we find that the State Police Regulations in fact create a property right in the plaintiff not to be transferred as punishment. Defendants allegedly conspired to deprive him of this right without giving him a hearing and therefore the complaint states a cause of action under the Fourteenth Amendment.

The *Rizzo* case is also inapplicable to the facts of this case. *Rizzo* involved a class action seeking to set up a new procedure to handle complaints of police misconduct in Philadelphia. The *Rizzo* Court noted that the plaintiffs had established no link between the alleged instances of police misconduct and any official policies of the named defendants or the police department. The Supreme Court in *Rizzo* sustained dismissal of the plaintiffs' complaint on the basis that intervention by the federal courts would interfere with the proper daily functioning of the Philadelphia Police Department. In this case, the plaintiff challenges decisions by the named defendants who carried out an alleged conspiracy to transfer him to Erie for punitive reasons. As previously stated, the plaintiff's complaint directly implicates liberty and property rights. Further, the plaintiff has not filed a class action and is not seeking a major overhaul of police procedures as was the case in *Rizzo.* The concern expressed by the Supreme Court in *Rizzo* about the intrusion of the federal courts into the daily operations of city police departments does not appear to be a major factor in this case.

Therefore, in conclusion, the court deems it appropriate that the plaintiff be permitted to present evidence in support of his claims in a trial on the merits of this case. The defendants' motion to dismiss will be denied for all of the above reasons. An appropriate order will be entered.