Robert PIENTA, et al.,
Plaintiffs-Appellees,

v.

VILLAGE OF SCHAUMBURG,
ILLINOIS, et al.,
Defendants-Appellants.

No. 82–1651.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1983.

Decided June 28, 1983.

Jack M. Siegel, Chicago, Ill., for defendants-appellants.

Harvey Grossman, The Roger Baldwin Foundation, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, PELL and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

In April 1981, plaintiffs filed their First Amended Complaint under 42 U.S.C. § 1983. Three of the plaintiffs, Robert Pienta, Theodore Pryka and Vincent De-George,[1] were officers employed by the Village of Schaumburg, Illinois, Police Department, and plaintiff Richard McGraw was a civilian employee of that Department. Defendants were the Village of Schaumburg, its Chief of Police, and three members of its Fire and Police Commission. Plaintiffs sought a declaratory judgment that parts of

two Police Department rules (reproduced in the Appendix hereto)—Administrative General Order 79–9 governing sick leave, and General Order 79–59 governing injury-on-duty leave—facially violated their First, Fourth, Fifth, Ninth and Fourteenth Amendment rights. They also sought an injunction against enforcing those regulations as well as $20,000 compensatory and $50,000 punitive damages for each plaintiff.

On February 5, 1982, the district court granted plaintiffs' motion for summary judgment. 536 F.Supp. 609. The Memorandum Opinion (App. 32) noted that the plaintiffs had been on injured-on-duty leave for varying periods from three to six months during which they were confined to their homes pursuant to the regulations. Plaintiffs and their families were also subjected to surveillance inside and outside their homes, frequent telephone calls and unannounced visits by Police Department personnel. The court decided that the regulations infringed plaintiffs' right to vote, right to free exercise of religion, and right to travel, and that an infringement of those fundamental rights must be justified by compelling state interests. Judge Leighton concluded that the state's interests in enacting the regulations were not compelling, but even if they were, the regulations were overbroad and unnecessarily infringed upon constitutionally protected activity. In addition to declaratory relief, the judgment under Civil Rule 54(b) granted a permanent injunction but reserved plaintiffs' claims for damages, costs and attorney fees "for negotiation between the parties or, if necessary, adjudication by the court" (App. 45). We affirm.

The morale-chilling regulations invalidated by the court below confine police and civilian employees of the Schaumburg Police Department on injury or sick leave to their residences. Those injured on duty but not hospitalized may only leave home when necessary to go to a hospital, visit a doctor

1. When the original complaint was filed on March 12, 1981, DeGeorge had already left the employ of the Schaumburg Police Department. His voluntary departure occurred on February 15, 1981.

or secure medicine and even then only after leaving notice with a Police Department official as to the name and address of the doctor, hospital or pharmacy. They also cannot change their place of recuperation or leave Illinois without authorization from the Chief of Police. Similar restrictions are imposed upon those on sick leave, except if a scheduled day off immediately follows a sick day, "the residency requirement will end at 0001 hours on the scheduled day off." Those stricken with heart attacks, major operations, broken limbs or other serious illness or injury may be permitted to leave their residences during recuperation if their Administrative Division Commander, with the approval of the Chief of Police, grants such permission.

 In effect, these regulations put plaintiffs under house arrest until their return to work. Their rights to vote, to exercise freely their religion by church attendance, to go to court, to attend political or family gatherings, and to travel were infringed. See, *e.g., Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (vote); *Abington School District v. Schempp,* 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (religion); *Shapiro v. Thompson,* 394 U.S. 618, 629, 89 S.Ct. 1322, 1328, 22 L.Ed.2d 600 (travel); *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (association). See also *Gissi v. Codd,* 391 F.Supp. 1333 (E.D.N.Y.1974) (in similar circumstances, plaintiff has right to visit attorney when necessary, and visit children at least once every two weeks). Since these regulations prohibit the exercise of constitutional rights, plaintiffs have standing to challenge them without attempting to disobey. *Muller v. Conlisk,* 429 F.2d 901, 903 (7th Cir.1970).

Defendants apparently concede that the regulations infringe some of plaintiffs' constitutional rights.[2] They argue, however,

that the rights infringed are not absolute, and that state regulation of the rights of a public employee must be evaluated under the rational basis test of *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708. This Court has already held that the test to be applied in determining the constitutionality of a government regulation of a public employee depends on the nature of the right affected. *Division 241 Amalgamated Transit Union v. Suscy,* 538 F.2d 1264, 1266 (7th Cir.1976), certiorari denied, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632. If a plaintiff's claim is grounded solely in the general liberty language of the due process clause as in *Kelley, supra,* the state need only demonstrate a rational relationship between the regulation and a legitimate state interest. If the public employee challenges limitations on rights specifically protected by other parts of the Constitution, the state must demonstrate that the regulation is necessitated by a compelling state interest and is narrowly tailored to meet that objective. *Suscy, supra; contra, Loughran v. Codd,* 432 F.Supp. 259, 263 (E.D.N.Y.1976) (applying rational basis test to police regulation).

 Because several of the rights infringed by the regulations are protected by specific provisions of the Bill of Rights, defendants must demonstrate a compelling state interest to justify the regulations. See *Elrod v. Burns,* 427 U.S. 347, 362–363, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547. Defendants' stated interests in avoiding abuse of the liberal sick leave policy and protecting the public fisc; efficiently allocating manpower by fostering an expeditious return to work and requiring those on leave to stay by the phone in case they are needed; and maintaining the morale of those who must fill in for those on leave, do not rise to the level of compelling interests. In addition, these interests can surely be achieved without a blanket prohibition on

---

2. For example, defendants concede that the regulations prevent plaintiffs from attending religious services outside their homes during

the time they are on leave (Br. 25); and prevent them from attending court during that period as well (Br. 23).

plaintiffs' freedom of movement.[3] The Schaumburg Police Department in fact already has several unchallenged regulations that satisfy the state's interests in preventing malingering and taking unjustified time off. Thus the plaintiffs are not assailing the requirement of the sick leave order that they notify the Police Department of an intended absence sufficiently in advance to allow it to fill its manpower needs. In addition, an employee cannot be on sick leave more than three days without a verifying physician's certificate, and an absence of five days will require a certificate from the Village's examining physician upon the request of the Chief of Police. Administrative General Order 79–9 I.A. and H. (App. 5, 6). Those on injury leave must provide the department with a physician's certificate describing the injury and expected recovery time. The injured-on-duty employee is also required to report his injury to his supervisor. Injured employees must submit to an examination by the Village physician when requested to do so by the Chief of Police or his agent. General Order 79–59 I.A.1; I.D.1; I.E. (App. 7, 8). Still other regulations also not under attack require notification of illness and prohibit sick leave without just cause. Injured employees must permit periodic interviews as to the extent of the claimed injury and must submit to examination upon request. Employees on sick or injury leave are also required to notify their supervisors when leaving home or hospital. In addition, supervisors may visit sick or injured employees at reasonable hours with respect to the sickness or injury, and an untruthful employee will be subjected to "strict disciplinary action." They are also prohibited off-duty employment without obtaining prior approval. (Exhibit C to plaintiffs' brief.) These unchallenged regulations are far less restrictive than the blanket prohibition contained in the challenged regulations.

Finally, even under the rational basis test these regulations are of questionable validity. Defendants' basic argument is that an employee who is too sick or injured to report even for restricted duty is by definition too sick or injured to leave the house for any purpose—to go to court, to church, to a polling place, to a family picnic, or to respond to an emergency call on a personal matter. Yet an employee injured with a broken arm may not be able to report even for restricted duty desk jobs, but he is perfectly able to go to church or to court on a parking ticket. An employee with the flu may not qualify even for restricted duty but is perfectly able to leave the house to pick up his child at school if she gets sick or injured and suddenly has to come home. In addition, enforcement of the policy will not necessarily serve the Department's stated purpose of preventing abuse so as to save money and conserve manpower. Because the regulations do not require a doctor's certificate for sick leave for less than three days, for example, the dishonest employee can feign illness for such time and simply collect sick pay as long as he stays in his home. The "stay at home" requirement thus has no relation to the medical needs of the individual employee, and as such, has no relation to the legitimate interest of the Department in preventing abuse. In fact, the sick leave regulation grants the Chief of Police, rather than a medical officer, the power to permit employees to leave their homes without requiring notification to the Department! Cf. *Loughran v. Codd, supra,* 432 F.Supp. at 261 (district surgeon had power to decide whether and to what extent home confinement appropriate).

Of course, a municipal police department has a legitimate interest in handling sick and injury relief policies to assure the ability to carry out its public services. Some restrictions on the activities of an employee on leave are justifiable, and the Department should be entitled to verify whether an employee's absence from home is consistent with a claim of disability. See *Gissi v. Codd, supra,* 391 F.Supp. at 1336. Here, however, the two challenged regulations go

---

**3.** According to the Police Executive Research Forum and Police Foundation, Survey of Police Operational and Administrative Practices, Ch. 9, p. 67 (1981), cited by plaintiffs (Br. 10), 90% of the nation's police departments do not confine their employees to their homes during sick or injury leave.

too far in infringing on established constitutional rights. Accordingly, the partial summary judgment is affirmed, costs·on appeal to plaintiffs-appellees.

### APPENDIX

The regulations at issue provide in pertinent part:

General Order No. 79–59, Schaumburg Police Department Standard Operating Procedure Code A–35.2 (Injuries on Duty)
I.F. Absence from Home:

\* \* \* \* \* \*

2. Employees on injury leave must remain at their residence at all times except for matters that relate to their injury. (Exception: hospitalized personnel). Each time it is necessary for an employee to leave their (*sic*) residence to go to a hospital, or visit a doctor or secure medicine, they must notify the Schaumburg Police Department Communications Section and leave notice with the Communications officer as to the doctor's name and address that they are going to visit (hospital, drug store, etc.). Upon returning home, they will again notify the Communications Section by phone of their return.

\* \* \* \* \* \*

I.G. Personnel on injury leave will not change their place of recuperation or leave the state without authorization from the Chief of Police.

Administrative General Order No. 79–9, Schaumburg Police Department. Standard Operating Procedure Code A–24 (Sick Time)
I. SICK TIME

\* \* \* \* \* \*

B. It shall be the responsibility of all personnel reporting sick to remain at their residences until their next scheduled tour of duty, (exception—if a scheduled day off immediately follows a sick day, the residency requirement will end at 0001 hours on the scheduled

day off), unless they must go to a hospital or visit their doctor or secure medicine for their illness. However, if any personnel must leave their residence during their sick period, it shall be their responsibility to notify the Schaumburg Police Department Communications Section and leave notice with the Communications officer as to the doctor's name and address that they are going to visit, drug store, hospital, etc., and they will notify the Communications officer upon their return to their residence.

C. Personnel on sick leave will not change their place of recuperation or leave the state without authorization from the Chief of Police.

\* \* \* \* \* \*

I. The Administrative Division Commander with the approval of the Chief of Police may grant personnel stricken with serious illness or injury permission to leave their residence during the period of recuperation without requiring notification to the Police Department (i.e., heart attacks, major operations, broken limbs or serious injuries).