PHILADELPHIA LODGE NO. 5, FRATERNAL ORDER OF POLICE

v.

CITY OF PHILADELPHIA, W. Wilson Goode, Leo Brooks and Gregore Sambor.

LOCAL NO. 22, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL–CIO

v.

CITY OF PHILADELPHIA, W. Wilson Goode, Leo Brooks and William Richmond.

Civ. A. Nos. 82–4684, 82–4685.

United States District Court, E.D. Pennsylvania.

Dec. 11, 1984.

Michael Eichert, Bloom, Ocks, Fisher & Anderson, Philadelphia, Pa., for plaintiffs in both cases.

Pamela Perry, Asst. City Sol., City of Philadelphia, Philadelphia, Pa., for defendants.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The Fraternal Order of Police, Lodge No. 5 (FOP) filed this action (82–4684) pursuant to 42 U.S.C. § 1983 (1983) against the City of Philadelphia, the Mayor, the Managing Director and the Police Commissioner. Local No. 22, International Association of Firefighters (IAF), AFL–CIO filed an identical action (82–4685) with one exception. The IAF named the Fire Commissioner as a defendant in place of the Police Commissioner. The FOP, which acts as representative and bargaining agent for the Philadelphia Police Department, and the IAF, which acts as representative and bargaining agent for the Philadelphia Fire Department, challenge departmental regulations which pertain to sick leave procedure. The plaintiff in each case seeks declaratory and injunctive relief only, requesting this Court to declare the challenged regulations unconstitutional and enjoin their enforcement. All parties have filed cross-motions for summary judgment contending that no material issue of fact exists.

The motions for summary judgment filed by the FOP and IAF are granted for the limited purposes hereinafter discussed. The motions for summary judgment filed by the City are denied.

The regulations being challenged by the FOP and IAF require that a police officer or a firefighter who is on sick leave must remain in his (or her) residence at all times except for certain instances which are specified in the regulations. Directive 66 is the regulation contested by the FOP. Under it, two procedures exist by which a police officer may leave his residence or place of recovery when he takes sick leave. If an officer needs to receive medical treatment, attend a religious service or vote, the officer must telephone the district office with his departure time and destination. Upon his return, he must communicate that fact to the district office. If an officer wishes to go out for any other reason, he must obtain permission from the Personnel Officer. Such approval is commonly called a sunshine pass. The sunshine pass allows unlimited travel between the hours of 8:00 a.m. and 8:00 p.m. and must be renewed every two weeks.

In order to secure a sunshine pass, a police officer must acquire a doctor's note which states the officer's illness, the reason for his need to leave his residence, and the probable date of his return to duty. This note, along with a memo in which the officer requests permission to leave his residence, are presented to the officer's Commanding Officer who notes his recommendation on the memo. The officer can then obtain a sunshine pass application upon presentment of his approved memo and doctor's note. The Personnel Officer then decides whether to approve or disapprove the application. In his deposition at p. 36, the Personnel Officer states that no criteria exist to guide him or the Commanding Officer when determining whether to approve the application. He characterized the decision as purely discretionary.

Any police officer who violates these regulations is subject to disciplinary action. The first violation can merit a three to five day suspension. Any decision to institute disciplinary action is within the discretion of the Commanding Officer. In order to enforce the regulations, two civilian employees of the Police Department visit, from 9:00 a.m. to 5:00 p.m., the homes of officers who called in sick that day.

The IAF contests Directive 18 of the Philadelphia Fire Department which requires that a firefighter on sick leave remain at home at all times with certain exceptions. It is similar but not identical to Directive 66. Directive 18 permits a firefighter who has called in sick to notify his (or her) company officer when leaving his residence for medical treatment. The firefighter must also notify the company officer of his return. The directive explicitly states that attendance at religious services requires no notification. In order to receive approval for outdoor exercise, a firefighter must present a doctor's note to the Battalion Officer through his company officer. The note must specify an exercise

time limit. The firefighter must notify his company officer of his departure and return.

In order to leave the City or remain away from home for any period of time, a firefighter on sick or medical leave must submit his request, through channels, to the Fire Commissioner for approval. Since no criteria exist to guide the Fire Commissioner's determination, any decision by the Fire Commissioner is purely discretionary. In addition, the regulations make no provision for exercising the right to vote. Consequently, it must be inferred that a firefighter who desires to vote while absent due to illness could only do so with the permission of the Fire Commissioner.

The regulations specify that a failure to make proper notifications and to obtain proper prior approval will result in disciplinary action. Although the regulations do not provide parameters for such action, Deputy Chiefs, through Battalion Chiefs, determine the need for home visits and the type of disciplinary action to be taken if the firefighter is not home.

■ Before considering the merits of either case, the issue of whether a union has standing to assert rights of its members when those rights do not flow to the union must be addressed. The existence of such representational standing has been recognized in *Warth v. Seldin*, 422 U.S. 490, 491, 95 S.Ct. 2197, 2201, 45 L.Ed.2d 343 (1975). The Supreme Court held that representational standing for an association could exist when the association alleges, first, that its members suffer immediate or threatened injury as a result of the challenged action; second, that the members could bring the same suit individually; and third, that the nature of the claim and the relief sought does not require the individual participation of the injured parties for a proper resolution. *Id.* at 511, 95 S.Ct. at 2211–12. *See also Hunt v. Washington State Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Action Alliance for Senior Citizens of Greater Philadelphia v. Shapp*, 400 F.Supp. 1208 (E.D. Pa.1976). Since the claim asserted by the FOP and the IAF fulfills each of these requirements, the FOP and the IAF are properly before this Court.

This is a 42 U.S.C. § 1983 action in which both unions assert that their members' rights to vote, to travel, to privacy and to free exercise of religion, as guaranteed by the First, Fourth, Ninth, and Fourteenth Amendments to the U.S. Constitution, have been violated by enforcement of the sick leave regulations. On the basis of this claim, the unions request that this Court review the challenged regulations under a strict scrutiny test. *See Elrod v. Burns*, 427 U.S. 347, 362–63, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). On the other hand, the City asserts that the regulations only infringe upon general liberty rights which require the City to demonstrate only a rational relationship between the regulations and a legitimate state interest. *See Kelley v. Johnson*, 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976). Initially, this Court will determine the appropriate standard applicable to the challenged regulations.

■ When rights specifically protected by the Bill of Rights are curtailed by municipal regulations, then that municipality must demonstrate a compelling interest to justify their existence. *See Elrod*, 427 U.S. at 362–63, 96 S.Ct. at 2684; *NAACP v. Alabama*, 357 U.S. 449, 460–61, 78 S.Ct. 1163, 1170–71, 2 L.Ed.2d 1488 (1958). The Supreme Court has indicated, however, that in certain areas a State has an interest as an employer which differs significantly from its interests in regulating the citizenry in general, and that when a State acts as an employer the courts should evaluate those actions under a more deferential standard than strict scrutiny. *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). *See Kelley*, 425 U.S. at 245, 96 S.Ct. at 1444–45; *Shawgo v. Spradlin*, 701 F.2d 470, 482–83 (5th Cir.1983).

■ Although the facts of this case are similar to the situation in *Pienta v. Village*

*of Schaumburg, Illinois,* 710 F.2d 1258 (7th Cir.1983), the court in that case chose to apply the strict scrutiny test. It appears that the regulations at issue in *Pienta* were much more restrictive than the regulations at issue in the present case, in that police officers on sick leave were strictly confined to their residences until their return to work. *Pienta,* 700 F.2d at 1259–60 (regulations were "morale-chilling" and "put plaintiffs under house arrest"). The *Pienta* court, perhaps influenced by the severe and absolute infringement of constitutional rights resulting from the challenged regulations, applied the strict scrutiny standard without citation to the Supreme Court's opinion in *Pickering.* However, two courts which reviewed the constitutionality of New York City Police Department regulations in suits similar to this one held that the rational relationship test applied. *See Gissi v. Codd,* 391 F.Supp. 1333 (E.D.N.Y.1974); *Loughran v. Codd,* 432 F.Supp. 259 (E.D.N.Y.1976). Since the City promulgated the two sets of challenged regulations pursuant to its role as employer, this Court will apply the rational relationship standard.

The FOP claims infringement of its members' rights to vote, to travel, to privacy, and to free exercise of religion. The City puts forth three reasons for the existence of Directive 66: first, to provide sufficient staffing of the police force to fulfill the Department's public duties; second, to reduce the cost of providing an adequate police force; and, third, to improve morale among employees who report for duty.

■ Since Directive 66 merely requires notification by telephone when a police officer on sick leave chooses to vote or attend religious services, this notice requirement is rationally related to the stated City goals. In addition, Directive 66 reserves no authority to Police Department officials to deny an officer his constitutional right to vote or attend religious services. Consequently, this Court has determined that the notice requirement does not limit an officer's exercise of his constitutional rights to vote or attend religious services beyond the

point necessary to attain legitimate state goals.

■ In claiming infringement of a police officer's right to travel, the FOP has misstated its case. The right to travel found in the Bill of Rights protects against any unreasonable burden on citizens who travel from state to state. *See Shapiro v. Thompson,* 394 U.S. 618, 629–31, 89 S.Ct. 1322, 1328–29, 22 L.Ed.2d 600 (1969); *United States v. Guest,* 383 U.S. 745, 757–58, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239 (1966). An officer's right under a sunshine pass to leave his residence and move about freely implicates a general liberty interest and not the Constitutionally-protected right to travel. Although the procedure by which an officer applies for a sunshine pass is rationally related to the previously stated goals, this does not hold true for the determinations made by the Personnel Officer. Since no guidelines exist for the Personnel Officer to apply in deciding whether to issue sunshine passes, their issuance has no rational basis. The determination rests purely within the discretion of the Personnel Officer. Therefore this Court holds that the City, through the Police Commissioner, must develop a set of reasonable and rational guidelines which will direct the Personnel Officer's determination as to the issuance of sunshine passes.

■ In addition, the sunshine pass only permits a police officer to leave his residence between 8:00 a.m. and 8:00 p.m. Since the Police Department has instituted a comprehensive application process by which only an officer who is unable to work will receive a sunshine pass, there is no rational basis for limiting the daily use of the pass to specific hours. Therefore, this Court holds that the 8:00 a.m. to 8:00 p.m. time limitation on the sunshine pass is invalid because it is not rationally related to any legitimate government purpose.

In summary, this Court has determined that Philadelphia Police Department Directive No. 66 does not violate a police officer's constitutional rights except as heretofore pointed out. The regulations pertaining to approval for a sunshine pass

must be implemented with reasonable and rational guidelines, and the 8:00 a.m. to 8:00 p.m. limitation must be eliminated as irrational. Accordingly, the Court will grant summary judgment in favor of the FOP limited to the considerations set forth in this Memorandum.

The IAF challenges Directive 18 of the Philadelphia Fire Department on grounds similar to those set forth by the FOP. The firefighters' union asserts that these regulations infringe upon rights guaranteed by the Bill of Rights, specifically the rights to vote, to travel, and to privacy, as well as general liberty interests. Since Directive 18 explicitly permits attendance at religious services without notification, the IAF does not claim infringement of that constitutional right. As explained above, Directive 18 will be analyzed under the rational relationship test. *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. *See Kelley*, 425 U.S. at 245, 96 S.Ct. at 1444–45; *Shawgo* at 482–83. The City cites the same three goals of ensuring adequate staffing, reducing costs, and improving morale as its rationale for the regulations.

■ Although Directive 18 does not mention how a firefighter on sick leave could exercise his right to vote, the regulations do include a procedure by which a firefighter may leave his residence for any reason if he obtains the prior approval of the Fire Commissioner. It would appear, therefore, that a firefighter on sick leave who wants to exercise his right to vote must obtain permission from the Fire Commissioner. Since there are few voting days in a year, the requirement that a firefighter pursue an application process which requires the approval of the Fire Commissioner has no rational relationship to the goals put forth by the City. A firefighter on sick leave who wishes to exercise his right to vote should be able to do so. The City, through the Fire Department, must amend the regulations and decide whether a firefighter desiring to vote should merely notify his company officer by phone, as required for medical treatment, or whether no notifica-

tion at all is necessary, as is the case for religious services.

■ Directive 18 specifically provides that a firefighter may leave his residence for exercise if he obtains a doctor's note and permission from the Battalion Chief through his company officer. Since the regulations do not specify what criteria the Battalion Chief or company officer should follow when granting or refusing permission for exercise, this Court is unable to determine whether the regulations are rationally related to the goals set forth by the City. The Court holds, therefore, that the City through the Fire Department must develop reasonable and rational guidelines to direct Battalion Chiefs and company officers in their decisions with respect to requests for exercise passes.

However, a firefighter who wishes to leave his residence for any reason other than exercise or medical treatment must receive approval from the Fire Commissioner. Here again, no guidelines exist for him to follow in making this determination. For the reasons heretofore stated in relation to Directive 66 of the Police Department, reasonable and rational guidelines should be promulgated setting forth the policy to be followed by the Fire Commissioner in making the determination as to when a firefighter on sick leave may leave his residence.

■ The Court has determined that the procedure by which the Fire Department visits the home of a firefighter on sick leave is constitutionally acceptable. Since the regulations would permit home visits of every sick firefighter, as heretofore stated, selective or sporadic visitation must also be permitted.

In summary, this Court finds that Philadelphia Fire Department Directive 18 does not violate the constitutional rights of a firefighter except as heretofore pointed out. The specific violations require: (1) the drafting and implementation of regulations which would allow a firefighter on sick leave to exercise his right to vote without any burdensome application process; (2)

the implementation of reasonable and rational guidelines for the Battalion Chiefs and company officers to consider in determining when to grant approval for permission to exercise; and (3), the implementation of reasonable and rational guidelines for the Fire Commissioner to consider in determining when to grant a firefighter on sick leave unrestricted permission to leave his residence. Summary judgment, therefore, will be granted in favor of IAF limited to the considerations set forth in this Memorandum.

## ORDER

### Civ. A. No. 82–4684

AND NOW, this 11th day of December, 1984, upon consideration of the motions of the plaintiff and defendants for summary judgment, and the responses thereto, for the reasons stated in this Court's Memorandum of December 11th, 1984,

IT IS HEREBY ORDERED:

1. The motion of the defendants, City of Philadelphia, W. Wilson Goode, Leo Brooks and Gregore Sambor, for summary judgment is DENIED.

2. The motion of the plaintiff, Philadelphia Lodge No. 5, Fraternal Order of Police, for summary judgment is GRANTED and defendants are ENJOINED to modify, amend and implement Philadelphia Police Department Directive 66 within the period of ninety (90) days from the date of this Order by:

1) Promulgating reasonable and rational guidelines to guide the Personnel Officer in granting a sunshine pass to a police officer on sick leave.

2) Vacating the daily time restrictions of 8:00 a.m. to 8:00 p.m. on the sunshine pass.

## ORDER

### Civ. A. No. 82–4685

AND NOW, this 11th day of December, 1984, upon consideration of the motions of the plaintiff and the defendants for summary judgment, and the responses thereto, for the reasons stated in this Court's Memorandum of December 11th, 1984,

IT IS HEREBY ORDERED:

1. The motion of the defendants, City of Philadelphia, Leo Brooks, and William Richmond, for summary judgment is DENIED.

2. The motion of the plaintiff, Local No. 22, International Association of Firefighters, AFL–CIO, for summary judgment is GRANTED and defendants are ENJOINED to modify, amend and implement Philadelphia Fire Department Directive 18 within the period of ninety (90) days from the date of this Order by:

1) Promulgating regulations permitting a firefighter on sick leave to exercise his right to vote without any burdensome application process;

2) Promulgating reasonable and rational guidelines to guide the Battalion Chiefs and company officers in granting to a firefighter on sick leave permission to exercise; and

3) Promulgating reasonable and rational guidelines to guide the Fire Commissioner in granting unrestricted permission to a firefighter on sick leave to leave his residence.