**Donald KORENYI, Plaintiff,**

**v.**

**DEPARTMENT OF SANITATION OF the CITY OF NEW YORK and the City of New York, Defendants.**

**No. CV 86–3626(RR).**

United States District Court,
E.D. New York.

Sept. 16, 1988.

Steven C. McGowen, Leeds & Morelli, Carle Place, N.Y., for plaintiff.

Peter L. Zimroth, Corp. Counsel of the City of New York by Isaac Klepfish, Asst. Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

RAGGI, District Judge:

Plaintiff Donald Korenyi, a ten-year employee of the New York City Department of Sanitation, sues the Department and the City pursuant to 42 U.S.C. § 1983 for alleged deprivations of constitutional and statutory rights in connection with his employment. Specifically, Korenyi claims that defendants' refusal to allow him to return to "light duty" work after he sustained a spinal injury discriminated against him because he was handicapped and, therefore, violated his rights under both the Federal Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (1985 & Supp.1988), and the Equal Protection Clause of the Fourteenth Amendment. Korenyi further alleges that the Department's sick leave rules and regulations are facially invalid in violation of the First Amendment, and are invalid as applied in violation of the First, Fourth, Ninth and Fourteenth Amendments. Korenyi also attacks that portion of his employment contract requiring non-resident City employees to pay to the City an amount equal to the City personal income tax paid by resident employees as violative of the Federal Kickback Act, 18 U.S.C. § 874 (1976). A pendent state tort claim is also raised.

Plaintiff and defendants cross-move for summary judgment. For the reasons stated on the record of oral argument on March 18, 1988, this court denies both parties' motions for summary judgment with respect to the claim of discrimination against the handicapped and the claim that the sick leave rules and regulations were unconstitutionally applied to plaintiff. Resolution of real factual disputes as to these matters requires a plenary trial.

For the reasons stated in this opinion, the court grants summary judgment in favor of defendants as to plaintiff's facial attack on the constitutionality of Department sick leave rules and regulations and his claim pursuant to the Kickback Act.

### I. *Factual Background*

#### A. Plaintiff's Employment History

On May 29, 1978, plaintiff was hired pursuant to the Comprehensive Employment and Training Act, 29 U.S.C. § 801 *et seq.* (1982), as an auto mechanic at the Depart-

ment of Sanitation's central repair shop in Woodside, New York. On June 6, 1979, he attained permanent civil service status.

Prior to commencing work, plaintiff, on May 4, 1978, had signed an agreement with the City, pursuant to section 822 of the New York City Charter, whereby he agreed that, if he were or became a non-resident while employed by the City, he would pay the City an amount equal to that paid by resident employees as City personal income tax, and that such payment could be effected through payroll withholding.

Plaintiff suffered a job-related injury to his spine on June 23, 1983. Treating physicians at North Shore University Hospital diagnosed his condition as "cord compression" and "anterior wedging of the spine," and recommended consultation with an orthopedist. Physicians at the Department of Sanitation Medical Clinic, on the other hand, on June 27, 1983, diagnosed plaintiff's condition as arthritis. He was instructed to return to work the following day and to see his own physician.

On June 27, 1983, plaintiff was also examined by Dr. Stanley D. Reed of HIP in Hempstead, New York. Dr. Reed prescribed ten days bed rest, and directed plaintiff to see an orthopedist and to refrain from lifting heavy objects in the interim.

In early November 1983, plaintiff reported to the Department of Sanitation clinic for an examination. Doctors found that plaintiff was indeed injured, and placed him on workers' compensation retroactive to June 28, 1983, with authorized sick leave to October 17, 1983.[1]

In late 1983, clinic doctors recommended that plaintiff be placed on light duty as of January 4, 1984. No light or "tissue" duty[2] then existed for plaintiff, and so his supervisors created a position for him taking inventory in the stock room. Plaintiff returned to work in this capacity on January 10, 1984 and continued in the position for the next two years.

On February 6, 1986, plaintiff was notified by the Department of Sanitation that there was no longer any "tissue duty" available for him. Because he was still physically unable to resume his former duties as an auto mechanic, plaintiff was placed on authorized sick leave status, with daily walking privileges from 10:00 a.m. to 12:00 noon to aid in his recuperation. Pursuant to Department sick leave rules and regulations, plaintiff was otherwise required to remain in his home from 7:00 a.m. until 9:00 p.m. with the exception of Sundays and legal holidays. Employees on sick leave are subject to home visits by Department of Sanitation investigators to insure that they are actually at home during the times required.[3]

On June 12, 1986, plaintiff's paid sick leave allowance for 1986 was exhausted. At or about this time, plaintiff unsuccessfully sought to return to tissue duty.

Pursuant to the collective bargaining agreement between the sanitation workers union and the Department of Sanitation, plaintiff was restored to the City's payroll as of January 1, 1987, and was again eligible for paid sick leave. On March 17, 1987, plaintiff reported to the Department clinic and requested that his walking privileges be increased to six hours a day. Clinic doctors denied this request. Plaintiff exhausted his paid sick leave benefits by May 12, 1987.

Plaintiff was re-examined by Department physicians on June 22, 1987, who made no objective findings of disability. Plaintiff was directed to return to work on June 23, 1987. Upon failing to do so, plaintiff was deemed absent without official leave.

---

1. The parties' dispute over plaintiff's conduct between June and November 1983 is not relevant to this motion. Suffice it to say that plaintiff voluntarily agreed to the forfeiture of five vacation days in connection with his failure to report his absence as required.

2. "Tissue duty" refers to a nontaxing position offered to employees as work out of their civil service title, which enables them to work while recuperating from injuries.

3. Plaintiff claims that he was the victim of incessant and harassing visits by Department inspectors, a contention sharply disputed by defendants.

On January 1, 1988, pursuant to the collective bargaining agreement, plaintiff was returned to the City payroll and placed on sick leave with two hours walking privileges.

Plaintiff alleges that, while on paid sick leave from 1983 to the present, he on numerous occasions requested and was denied permission to leave home for the following purposes:

1. Have his taxes prepared;
2. See his lawyer;
3. Pursue his workers' compensation claim;
4. Visit elected officials;
5. Go to court absent a subpoena;
6. Vote in local elections;
7. Go to the bank;
8. Shop for food;
9. Go to the post office;
10. Get his laundry done;
11. Go to and from the Department clinic;
12. Get his car inspected and repaired;
13. Renew his driver's license;
14. Make mortgage payments in person;
15. See his insurance agent;
16. Seek alternative employment;
17. Go to the Social Security Department;
18. Go to the Department of Labor; and
19. Go to the Equal Employment Opportunity Commission.

Defendants respond that plaintiff's walking privileges provided him with ample time to meet these needs. Plaintiff claims he did not think he could use his walking privileges for these reasons.

B. The Sick–Leave Regulations

The Department of Sanitation provides unlimited paid sick leave to its uniformed employees, and 90 days annual paid sick leave to employees, such as plaintiff, in trade titles. To prevent abuse of this liberal leave policy and to encourage employees to return to work as soon as possible, strict rules and regulations govern employee conduct while on paid sick leave. As already noted, employees on paid leave are required to remain at home between 7:00 a.m. and 9:00 p.m., with the exception of Sundays and legal holidays, unless otherwise authorized pursuant to Department guidelines.

These guidelines permit an employee to leave home without prior authorization if (1) he is coming to the Department of Sanitation clinic; (2) he is picking up his paycheck between 7:00 and 11:00 a.m. on pay day; or (3) he is confronted with a medical, dental or other life-threatening emergency. Prior authorization is required for other specified purposes, such as undergoing doctor-prescribed physical therapy, shopping at drug or grocery stores, mailing a certain form to the Department and attending wakes and funerals. Authorization is granted if an employee can show that another person could not reasonably perform the activity for him, or that he could not use the mails for the matter. When authorization to leave home is granted, the employee is required to provide appropriate verification.

The guidelines explicitly state that an employee will be *denied* permission to leave his house for any of the following reasons:

1. Appointments with lawyers;
2. Moving cars;
3. Walking dogs;
4. Going to church or other religious services;
5. Picking up children from school or other locations;
6. Police;
7. Self-prescribed physical therapy;
8. Pick up paychecks after 3:00 p.m.

In an affidavit submitted in connection with these motions, Sidney Glassberg, Chief of the Department Sick Leave Unit, states that, despite the guidelines, requests to attend church or religious services would not be perfunctorily denied in cases of "very important religious holy days, such as Good Friday."

Unannounced home visits to ensure compliance with the Department's rules and regulations are generally made daily. The employee signs a departmental form as proof that he was in fact at home when visited. Suspected violators or malingerers are subject to multiple daily visits. If an employee does not appear to be home when a visit occurs, a Department investigator will telephone. If no response is obtained, a message is left on the employee's door instructing him to call the Department and explain his absence.

## II. *Discussion*

### I. Facial Attack on Constitutionality

Plaintiff seeks a declaration that the Department of Sanitation's sick leave rules and regulations are unconstitutional on their face insofar as they interfere with employees' First Amendment rights. Specifically, plaintiff claims the rules infringe on the right to travel, the right to consult with counsel, the right to associate freely, the right to vote, and the right freely to exercise one's religion.

### A. The Standard of Review

In recent years, a number of federal courts have addressed the constitutionality of government sick leave policies that restrict, to varying degrees, the freedom of movement of an employee who, despite his inability to work, is receiving pay while at home. *E.g., Hambsch v. Department of the Treasury*, 796 F.2d 430 (Fed.Cir.1986); *Pienta v. Village of Schaumberg*, 710 F.2d 1258 (7th Cir.1983); *Voorhees v. Shull*, 686 F.Supp. 389 (E.D.N.Y.1987); *Serge v. City of Scranton*, 610 F.Supp. 1086 (M.D.Pa. 1985); *Philadelphia Lodge No. 5 v. City of Philadelphia*, 599 F.Supp. 254 (E.D.Pa. 1984), *aff'd mem. sub nom. Local 22, Int'l Assoc. of Firefighters v. City of Philadelphia*, 779 F.2d 43 (3d Cir.1985); *Loughran v. Codd*, 432 F.Supp. 259 (E.D.N.Y.1976). On the one hand, the courts have expressed concern that such restrictions seem analogous to "house arrest." *Pienta v. Village of Schaumburg*, 710 F.2d at 1260. On the other hand, they have recognized the not-insignificant management problem that the restrictions address, *i.e.,* the maintenance of liberal sick leave policies without encouraging malingering or other abuses at public expense. *See Loughran v. Codd*, 432 F.Supp. at 263–64.

The parties disagree as to the standard this court should apply in addressing the constitutionality of defendants' sick leave rules and regulations. Plaintiff urges that the rules be struck down because defendants cannot articulate a "compelling interest" to justify their existence. *See Pienta v. Village of Schaumburg, supra.* Defendants, however, argue that the "rational relation" between the rules and the governmental interests they are intended to foster precludes a finding of unconstitutionality. *See Hambsch v. Department of the Treasury*, 796 F.2d at 434; *Voorhees v. Shull*, 686 F.Supp. at 393–94; *Serge v. City of Scranton*, 610 F.Supp. at 1087–88; *Philadelphia Lodge No. 5 v. City of Philadelphia*, 599 F.Supp. at 257–58; *Loughran v. Codd*, 432 F.Supp. at 263.

In fact, a single standard of review may not be appropriate for plaintiff's various challenges. The critical factor affecting the court's choice of a standard in a case such as this is that plaintiff is suing a governmental body in his capacity as its employee, not as an ordinary citizen. The Supreme Court has recognized that the legitimate interest government has in regulating the conduct of its employees is greater than that it would have in regulating the conduct of the general citizenry. *Voorhees v. Shull*, 686 F.Supp. at 393 (citing *Kelley v. Johnson*, 425 U.S. 238, 245, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708 (1976), and *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).

Mindful of this interest, no court appears to have required a showing of more than a "rational relationship" between a sick-leave rule and the state interest it fosters when a plaintiff's challenge "is grounded solely in the general liberty language of the due process clause." *See Pienta v. Village of Schaumburg*, 710 F.2d at 1260. Of course, in *Pienta*, on which plaintiff places strong reliance, the Seventh Circuit held that if a plaintiff's challenge were premised "on rights specifically protected" by the Consti-

tution, "a compelling state interest" for the rule would have to be demonstrated. *Id.*

This distinction has not been universally adopted. *See Voorhees v. Shull,* 686 F.Supp. at 393–94 (which declined to follow different standards based on the nature of the right involved, relying on the rational relation test for all challenges but those based on particular First Amendment claims). In *Pickering v. Board of Education,* 391 U.S. at 569, 88 S.Ct. at 1735, a case not referred to in *Pienta,* the Supreme Court found it neither appropriate nor feasible to lay down a "general standard" of review, even for alleged First Amendment deprivations, when the case involved a public employee:

> The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, ... and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Id.* at 568, 88 S.Ct. at 1734.

The Second Circuit, relying on *Pickering,* has adopted a "case-by-case" review of governmental employees' challenges to alleged infringements of their First Amendment rights, for "[t]hough a public employee does not lose his right to free speech by becoming a public employee, not all restraints on such speech are unreasonable." *Janusaitis v. Middlebury Volunteer Fire Dep't,* 607 F.2d 17, 25 (2d Cir.1979).

Thus, in *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 58 (2d Cir.1987), the Second Circuit recognized that a public employee's speech might "[warrant] less protection" than that of a private citizen, but nevertheless required defendants to show that plaintiff's conduct in fact impaired the loyalty, harmony and efficiency of the fire department to support any imposition of sanctions on the "American tradition of speaking out against inequities," *id.* at 58–59.

**B. Plaintiff's Constitutional Challenges**

Mindful of the principles enunciated in these cases, this court thus considers each of plaintiff's claims of facial unconstitutionality separately.

**1. *Right to Travel***

The right to travel is not one specifically enunciated in either the First Amendment or any other clause of the Constitution. It derives, rather, from "our constitutional concepts of personal liberty." *Shapiro v. Thompson,* 394 U.S. 618, 629, 89 S.Ct. 1322, 1328, 22 L.Ed.2d 600 (1969); *King v. New Rochelle Mun. Hous. Auth.,* 442 F.2d 646, 648 (2d Cir.), *cert. denied,* 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971). As such, the case law uniformly supports the conclusion that limitations on a public employee's exercise of this right need be supported only by a rational relationship to a legitimate governmental interest. *E.g., Pienta v. Village of Schaumberg,* 710 F.2d at 1260; *Loughran v. Codd,* 432 F.Supp. at 264–65; *see also Philadelphia Lodge No. 5 v. City of Philadelphia,* 599 F.Supp. at 258 (constitutional right to travel recognized only in interstate context). The court finds this standard satisfied in this case.

The very fact of public employment necessarily limits an individual's ability to travel. Instead of being free to come and go completely as he pleases, the employee, in return for a salary, agrees to report every day at a fixed time to his employer's place of business and to perform certain tasks. In this case, the defendant employer has agreed to continue salary payments to an employee too sick to report to work, as long as the *bona fides* of his claim of illness are established by the employee actually being at home recuperating. Admittedly, the hours when the sick employee must be at home are greater than the normal work day, but this requirement is certainly a rational way to protect against "goldbricking." It is reasonable, after all, to expect that an employee too ill to work is too ill to be going about other matters outside the home, even beyond the hours of nine to five. *See Loughran v. Codd,* 432 F.Supp. at 264 (police officer who claimed he was unable to return to restricted duty properly denied leave to continue as coach of department football team).

The court further notes that the defendant Department has itself provided for a

variety of exceptions to its "at home" requirement. Clinic doctors can approve "walking privileges" to assist in a patient's recuperation. Various guidelines permit an employee to tend to emergencies, attend funerals and even go to the grocery store. No challenge has been made that these guidelines are inadequate to insure against arbitrary application. *Cf. Voorhees v. Shull* 686 F.Supp. at 394–95 (rational regulations struck down because lack of guidelines created potential for arbitrary application); *Philadelphia Lodge No. 5 v. City of Philadelphia*, 599 F.Supp. at 258–59 (same).

The court accordingly finds a rational relationship to exist between defendants' regulations and the legitimate interests they have against abuse of the Department's sick leave policy. Moreover, adequate procedures exist to insure against arbitrary application of the regulations. The court therefore finds no facially invalid infringement of sick employees' right to travel.

### 2. *Right to Consult with Counsel*

■ Plaintiff's challenge to defendants' guideline denying employee requests to leave home to meet with an attorney is flawed in that there is no constitutionally protected right to counsel outside the criminal arena, so long as one is not denied "meaningful access to the courts." *See Hodge v. Police Officers*, 802 F.2d 58, 60–62 (2d Cir.1986); *Jenkins v. Chemical Bank*, 721 F.2d 876, 879–80 (2d Cir.1983); *Ennis v. Adamczyk*, No. 85–7482 (S.D.N.Y. Aug. 12, 1986) [1986 WL 9230] (LEXIS, Genfed library, Dist File); L. Tribe, *American Constitutional Law* § 10–15, at 553 (1978). Certainly, plaintiff does not allege that his access to the courts has been impaired.

■ In any event, the regulation, on its face, hardly denies employees the ability to consult with an attorney. An employee is free to discuss legal matters by telephone, in writing and even personally insofar as counsel wishes to visit at the employee's home. The court notes that, even in the criminal context, where the Sixth Amendment particularly protects a defendant's

right to counsel, many incarcerated defendants communicate with their lawyers in just these ways.

In short, plaintiff's complaint is really not with any inability to secure the advice of an attorney, but rather with the fact that employees are not granted permission to *travel* to see an attorney. There being no real Sixth Amendment right here at stake, and the limitations on travel being rationally related to defendants' interest in the integrity of the sick leave policy, the court declines to strike down the regulations as facially violative of the right to counsel.

### 3. *Freedom of Association*

■ The Supreme Court has long recognized a right to associate for the purpose of engaging in expression specifically protected by the First Amendment and has engaged in strict scrutiny of state action that impairs this right. *See Roberts v. United States Jaycees*, 468 U.S. 609, 618–19, 622–23, 104 S.Ct. 3244, 3251–52, 82 L.Ed.2d 462 (1984); *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 294, 102 S.Ct. 434, 436, 70 L.Ed.2d 492 (1981); *NAACP v. Button*, 371 U.S. 415, 431, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). Plaintiff does not complain of any infringement of employees' right to associate for purposes of expression.

Instead, his association claim is based on the alleged limitation on sick employees' ability to meet with family and friends during those periods that the Department requires recuperation at home. Of course, the very fact of employment necessarily limits the manner and frequency with which one can conduct social relations during business hours.

Presumably, however, plaintiff's claim is premised on the line of cases—sometimes focusing on the right of association, other times on privacy interests—concerned with undue state intrusion into those limited but most intimate human relationships critical to the enjoyment of personal liberty. *See, e.g., Roberts v. United States Jaycees*, 468

U.S. at 617–18, 104 S.Ct. at 3249–50; *Zablocki v. Redhail,* 434 U.S. 374, 383–86, 98 S.Ct. 673, 679–81, 54 L.Ed.2d 618 (1978); *Wisconsin v. Yoder,* 406 U.S. 205, 231–32, 92 S.Ct. 1526, 1541–42, 32 L.Ed.2d 15 (1972).

Because the types of human relationships and the circumstances under which they are conducted span a broad range, courts have recognized that the degree of constitutional protection can vary widely. *Roberts v. United States Jaycees,* 468 U.S. at 620, 104 S.Ct. at 3250; *Compare Wisconsin v. Yoder, supra, with Mason v. General Brown Central School District,* 851 F.2d 47 (2d Cir.1988) (parental objections to reasonable state regulations affecting their children's health or education viewed more strictly when premised on long-standing religious beliefs than on personal or philosophical convictions, however strongly held).

In this case, only limited scrutiny of the Department's regulations is warranted since the intrusion on employees' ability to meet with family and friends is minimal and implicates no other constitutional right. Plainly these regulations do not intrude at all on a person's decision as to those with whom he will share his home. Neither is there any limit on the frequency or duration of visits from friends and family that a sick employee can receive at his home. Instead the regulations only require that an employee too ill to return to work demonstrate the *bona fides* of his claim by spending his time recuperating and not engaging in social contact outside the home. Moreover, the regulations do not interfere with an employee's ability to visit friends and family outside the home on Sundays and holidays.

The court finds no facial infringement on employees' personal freedom of association from the Department's regulations.

### 4. *Right to Vote*

 Although plaintiff claims the regulations, on their face, violate the right to vote of employees on sick leave, since the defendants do not require sick employees to be home on legal holidays and since Election Day is a legal holiday in New York, N.Y.Gen.Constr.Law § 24 (McKinney Supp.1988), there is no such constitutional defect in the regulations.

### 5. *Free Exercise of Religion*

 Plaintiff raises a facial challenge to defendants' guideline providing for denial of a sick employee's request to attend a church or other religious service. Defendants do not attempt to argue that this guideline, implicating a specifically articulated First Amendment right, is rationally related to a legitimate state interest; much less do they advance any compelling state interest for the guideline. Instead, defendants submit the affidavit of Chief Glassberg to the effect that the guideline does not really state Department policy. He claims that authorization to leave home would likely be granted an employee who wished to attend religious services on a "very important" holy day, "such as Good Friday." Mr. Glassberg does not state what holy days the Department is prepared to recognize as "very important," nor what guidelines are followed in determining what are important holy days. *See Voorhees v. Shull,* 686 F.Supp. at 394–95 (even rational policy must be effected through guidelines that insure against arbitrary application); *Philadelphia Lodge No. 5 v. City of Philadelphia,* 599 F.Supp. at 258–59. Neither does Mr. Glassberg, nor anyone else on behalf of defendants, indicate how, if at all, this caveat to the guideline was communicated either to employees covered by the sick leave rules or to those individuals who, on behalf of defendants, make authorization decisions.

Despite the serious questions presented by the express language of a guideline limiting all attendance at religious services, and even by an *ad hoc* modification that has no safeguards against arbitrary application, this case may not be the appropriate vehicle for judicial review.

"To bring a cause of action in federal court requires that [plaintiff] establish at an irreducible minimum an injury in fact; that is, there must be some ' "threatened or actual injury resulting from the putatively illegal action." ' " *Virginia v. American*

*Booksellers Ass'n,* —— U.S. ——, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988) (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973))). In this case, plaintiff, who has been subject to defendants' sick leave regulations for four years, alleges neither any actual injury to his right freely to exercise his religion nor any threatened injury that he foresees. When at oral argument, the court inquired as to whether plaintiff was complaining of any actual infringement of his own free exercise rights, his counsel candidly acknowledged that he was not.

On this record the court finds that plaintiff presents no case or controversy as to any infringement on his free exercise of religion and, therefore, concludes that it is without jurisdiction to entertain the facial challenge presented. *See Doe v. Blum,* 729 F.2d 186, 189 (2d Cir.1984) (sexually active teenagers who challenged constitutionality of New York practice of mailing family-planning information only to heads of households stated no injury in fact since plaintiffs did not allege that they had ever requested and been denied such information).

Plaintiff's facial challenge to the Department sick-leave rules and regulations is dismissed in its entirety.

## II. Section 1983 Claim Based on Criminal Statute

Pursuant to 42 U.S.C. § 1983, plaintiff challenges payment he is required to make under section 822 of the New York City Charter[4] as violative of rights secured him by 18 U.S.C. § 874, commonly referred to as the Kickback Act.

■ Plainly, section 1983 can be invoked to challenge state action that violates rights secured by federal statute as well as by the Constitution. *See Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). But where the statute by its terms forecloses private enforcement, or where it does not itself create enforceable rights, privileges or immunities, no section 1983 action can be maintained. *See Wright v. City of Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 420–21, 107 S.Ct. 766, 770–71, 93 L.Ed.2d 781 (1987) (private party could sue to enforce rights established by Brooke Amendment to Housing Act); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20–21, 101 S.Ct. 2615, 2626–27, 69 L.Ed.2d 435 (1981) (intent to foreclose private action inferred from comprehensive remedial scheme); *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 21–24, 101 S.Ct. 1531, 1542–43, 67 L.Ed.2d 694 (1981) (statutory provisions were only "findings" and did not rise to level of an enforceable right).

■ In this case, plaintiff's section 1983 action is premised on a federal criminal statute. Certainly, where there is some statutory basis for inferring a civil cause of action from a criminal statute, courts have done so. *See Cort v. Ash,* 422 U.S. 66, 79 n. 11, 95 S.Ct. 2080, 2088 n. 11, 45 L.Ed.2d 26 (1975) (per curiam) (citing *Wyandotte Transp. Co. v. United States,* 389 U.S. 191, 201–02, 88 S.Ct. 379, 385–86, 19 L.Ed.2d 407 (1967)); *J.I. Case Co. v. Borak,* 377 U.S. 426, 432–33, 84 S.Ct. 1555, 1559–60, 12 L.Ed.2d 423 (1964); *Texas & Pac. Ry. v.*

---

**4.** That section of the City Charter provides:
§ 822. Condition precedent to employment.
a. Notwithstanding the provisions of any local law, rule or regulation to the contrary, every person seeking employment with the city of New York or any of its agencies regardless of civil service classification or status shall sign *an agreement as a condition precedent* to such employment to the effect that if he is or becomes a nonresident individual as that term is defined in section 11–1706 of the administrative code of the city of New York or any similar provision of such code, during

his employment by the city, he will pay to the city an amount by which a city personal income tax on residents computed and determined as if he were a resident individual, as defined in such section, during such employment, exceeds the amount of any city earnings tax and city personal income tax imposed on him for the same taxable period.
*See Legum v. Goldin,* 55 N.Y.2d 104, 447 N.Y.S. 2d 900, 432 N.E.2d 772 (1982) (upholding section as legitimately contracted for term of employment).

*Rigsby,* 241 U.S. 33, 38–40, 36 S.Ct. 482, 483–85, 60 L.Ed. 874 (1916). But the Supreme Court has cautioned against entertaining private causes of action based on "a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone." *Cort v. Ash,* 422 U.S. at 80, 95 S.Ct. at 2089. Not surprisingly then, federal courts have generally refused to recognize private causes of action derived from criminal statutes. *E.g., Federal Sav. & Loan Ins. Corp. v. Reeves,* 816 F.2d 130, 137–38 (4th Cir.1987) (no private action for violations of 18 U.S. C. §§ 657, 1001, 1006, 1008, 1014); *Shaw v. Neece,* 727 F.2d 947, 949 (10th Cir.) (no private action pursuant to 18 U.S.C. §§ 241, 242, 1503), *cert. denied,* 466 U.S. 976, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984); *Ryan v. Ohio Edison Co.,* 611 F.2d 1170, 1178–79 (6th Cir.1979) (no private action for mail fraud in violation of 18 U.S.C. § 1341).

Certainly, nothing in the language or history of 18 U.S.C. § 874 suggests that it was intended either to create a private cause of action, or even to apply to plaintiff's situation. *See Cort v. Ash,* 422 U.S. at 80, 95 S.Ct. at 2089 (where protection of individual in plaintiff's situation is clearly the primary purpose of the criminal statute, private cause of action may be cognizable).[5] Although the language of the Kickback Act is broad,[6] courts have been disinclined, even in the criminal context, to read it literally. *See Slater v. United States,* 562 F.2d 58, 59 (1st Cir.1976) (lest "every petty blackmail scheme" become "a federal crime if the victim happened to work on a federally subsidized building project"). Indeed, the Supreme Court has held that "not every person or act falling within the literal sweep of the language of the Kickback Act necessarily comes within

its intent and purpose." *United States v. Carbone,* 327 U.S. 633, 637, 66 S.Ct. 734, 736, 90 L.Ed. 904 (1946). In that case, a criminal action was dismissed against labor officials charged with demanding union fees, under threat of dismissal, pursuant to an agreement between the union and the employer, from all workers on a federal construction project. Such conduct was deemed "normal ... to implement the legitimate objective of a closed shop," and not within the "narrow problem of kickbacks which Congress sought to remedy." *Id.* at 641–42, 66 S.Ct. at 738–39.

The "narrow problem" with which the statute is concerned focuses on employers who procure government construction contracts for certain dollar amounts predicated on representations that the laborers employed will be paid the wage rate required by the government. Employers who then threaten workers with discharge unless they kickback a percentage of their pay— thereby defeating the government's efforts to secure a decent wage for laborers on federal projects—are subject to prosecution. *See id.* at 638, 66 S.Ct. at 736. ·

Plainly, although defendants are recipients of federal funds, it can hardly be said that the New York City Sanitation Department is a federal construction project. In any event, there is no evidence that the City, in return for federal funds, promised the United States to pay employees at a particular rate and now surreptitiously seeks to evade this commitment. To the contrary, the terms of the City Charter are a matter of public record, readily available to federal officials who have neither withheld money nor instituted criminal proceedings based on section 822. More importantly, the Charter provision seems to in-

---

**5.** Courts have not been inclined to read this language in *Cort* liberally. The mere fact that one is a victim of an alleged crime is not enough, for example, to create a private cause of action. *See Giano v. Martino,* 673 F.Supp. 92, 95 (E.D.N.Y.) (Federal Kidnapping Act not intended to confer rights on victim but rather to assist states in enforcement of laws), *aff'd mem.,* 835 F.2d 1429 (2d Cir.1987).

**6.** 18 U.S.C. § 874 (1976) provides:

Whoever, by force, intimidation, or threat of procuring dismissal from employment, or by any other manner whatsoever induces any person employed in the construction, prosecution, completion or repair of any public building, public work, or building or work financed in whole or in part by loans or grants from the United States, to give up any part of the compensation to which he is entitled under his contract of employment, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

**398**

sure a certain equality between the take-home pay of City employees who reside within the five boroughs and those who live outside the City limits, and thus reflects a local political accommodation not properly within the narrow scope of "kickback rackets" prohibited by federal law.

Plaintiff's section 1983 challenge to section 822 of the City Charter is dismissed for failure to state a claim. The court declines to exercise jurisdiction over plaintiff's pendant state tort claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## CONCLUSION

The court hereby dismisses so much of plaintiff's complaint as challenges the facial constitutionality of defendants' sick leave rules and regulations and the requirements of section 822 of the City Charter.

SO ORDERED.