660 F.2d 1260
 Officers William J. VORBECK, Roy L. Perkins, George
Ratterman, Walter Otten, Gary Perkins, Joseph
Brasser, and The St. Louis Police
Association, a not for profit
organization, Appellants,
v.
John A. SCHNICKER, Jr., Suzanne Hart, Frederick N. Weathers,
and James F. Conway, as the Board of St. Louis
Police Commissioners of the City of St.
Louis, Appellees.
 No. 80-1982.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 18, 1981.
Decided Oct. 1, 1981.
Certiorari Denied Jan. 25, 1986.
See 102 S.Ct. 1278.
 
 London, Greenberg & Fleming, Lawrence J. Fleming (argued), St. Louis, Mo., for appellants.
 Klutho, Cody & Kilo Attys., Inc., Edward C. Cody (argued) and Charles W. Kunderer, St. Louis, Mo., for appellee.
 Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 The St. Louis Police Officers Association and several individual members of the St. Louis Police Department (appellants) brought this action for injunctive and declaratory relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 et seq., alleging that certain provisions of the personnel regulations of the St. Louis Police Department are unconstitutional.
 
 
 2
 None of the individual plaintiffs has been disciplined under the regulations in question. They sue on the basis that the regulations are vague and overbroad and that they unnecessarily chill the officers' exercise of their constitutional rights. Certain of the rules are viewed as arbitrary and capricious, having no rational relation to any legitimate public interest. This is not a class action suit.
 
 
 3
 A hearing was held on August 11-12, 1980. On October 15, 1980, the court entered judgment upholding the constitutionality of all the regulations which remained challenged except one, which was amended prior to the final order and is not in issue here.
 
 
 4
 The rules in dispute were promulgated by the Board of Police Commissioners of the City of St. Louis, Missouri (appellees), and are contained in the St. Louis Police Manual. All of the contested rules are found in section 7.010, entitled "Standards of Conduct." The challenged subsections, briefly summarized, provide the following:
 
 
 5
 Subsection (c) proscribes conduct "unbecoming to a member of the Department."
 
 
 6
 Subsection (d) prohibits any conduct "contrary to the good order and discipline of the Department."
 
 
 7
 Subsection (e) prohibits any conduct "detrimental to the public peace or welfare."
 
 
 8
 Subsection (f) prohibits an officer from drinking alchoholic beverages when off duty to an extent which would render him "unfit for immediate duty."
 
 
 9
 Subsection (h) prohibits "(f)ailing to maintain good credit relations with creditors."
 
 
 10
 Subsection (i) requires an officer to obtain permission of the Police Board before accepting anything of value in settlement for personal injury or property damages incurred in the course of duty.
 
 
 11
 Subsection (m) proscribes leaving the city or county of St. Louis for a period exceeding 24 hours without having first obtained the permission of the commanding officer.
 
 
 12
 Subsection (g) prohibits an officer from leaving his residence or place of confinement while on the sick list except to obtain medical treatment or attention.
 
 
 13
 Subsection (w) subjects an officer to disciplinary action for engaging in secondary employment without the permission of the Chief of Police.
 
 
 14
 Subsection (x) requires an officer to be prepared at all times to act immediately, to detect and prevent crime, and to preserve the peace and order, whether or not on duty.
 
 
 15
 Although we recognize that some of the prohibitions contained in the disputed police regulations are indeed cast in broad terms, we hold that the issues raised in this appeal are not ripe for judicial determination, and, for the reasons stated below, we affirm the judgment of the district court, 498 F.Supp. 158.[1]
 
 I.
 
 16
 Due process requires that a penal statute be "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Uncertainty in a criminal statute must prove fatal to its validity. "A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue." Id. at 393, 46 S.Ct. at 128 (quoting United States v. Capital Traction Co., 34 App.D.C. 592).
 
 
 17
 The prohibition against vagueness extends to administrative regulations as well as to penal statutes. E. g., Bence v. Breier, 501 F.2d 1185, 1188 (7th Cir. 1974), cert. denied, 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821 (1975). However, when administrative regulations such as those applied to a police force are at issue, factors which are not relevant in examining a criminal statute emerge and must be taken into account when weighing demands for specificity.
 
 
 18
 There are areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision. Control of the broad range of disorderly conduct that may inhibit a policeman in the performance of his official duties may be one such area, requiring as it does an on-the-spot assessment of the need to keep order.
 
 
 19
 Smith v. Goguen, 415 U.S. 566, 581, 94 S.Ct. 1242, 1251, 39 L.Ed.2d 605 (1974).
 
 
 20
 The provisions of the personnel manual at issue here do regulate aspects of the conduct of police officers which are left unregulated in civilian life. Such regulation, within reasonable bounds, is necessary to the effective operation and management of the police force. See Kelley v. Johnson, 425 U.S. 238, 245-46, 96 S.Ct. 1440, 1444-45, 47 L.Ed.2d 708 (1976).
 
 
 21
 Vagueness and overbreadth are matters of degree and context. See Broadrick v. Oklahoma, 413 U.S. 601, 615-16, 93 S.Ct. 2908, 2917-18, 37 L.Ed.2d 830 (1973); Bence v. Breier, 501 F.2d at 1188. The Supreme Court, in Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), examined certain provisions of the Uniform Code of Military Justice[2] and found that they were neither unconstitutionally overbroad nor vague. The Court wrote: "For the reasons which differentiate military society from civilian society, we think Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules by which the former shall be governed than it is when prescribing rules for the latter." Id. at 756, 94 S.Ct. at 2561. Thus the Court held that special considerations relevant to military needs warranted a "broader sweep" in military regulations than might be permissible in a civilian criminal code.
 
 
 22
 Police regulations, like military regulations, are generally by necessity cast in broad terms. As the court below pointed out,
 
 
 23
 The St. Louis Metropolitan Police Department is a 1900 member para-military organization charged with police functions within the City of St. Louis which is a large section of a two and one-half million populated metropolitan area. Their functions include riot control, traffic regulation, minor criminal matters, and major metropolitan area drug control. Members of the Police Department are engaged in both uniform activities and highly sensitive undercover operations. It is essential that they be subject to many stringent rules and regulations which would not apply to other government agencies.
 
 
 24
 In Bence v. Breier, supra, the Seventh Circuit explicitly refused to extend the reasoning of Parker v. Levy, supra, dealing with military regulations, to regulations of the Milwaukee Police Department. The regulation challenged in Bence proscribed "conduct unbecoming a member and detrimental to the service." That court found it unconstitutionally vague on its face but then added that even if it were not facially invalid, its application in the circumstances presented in that case would be constitutionally impermissible. Id. at 1193. In distinguishing Parker v. Levy, the Bence court relied heavily on the language in Parker which indicated that the military regulations were upheld because the "seemingly imprecise" standards had gained acceptable meaning through custom and usage. Bence v. Breier, 501 F.2d at 1191-92. The Bence court concluded that
 
 
 25
 even though the phrase 'conduct unbecoming an officer and a gentleman' has attained a fixed and certain content in the military which is constitutionally sufficient to withstand an attack on vagueness grounds, it does not follow that the content is transferable to civilian police department rules incorporating the same language.
 
 
 26
 Id. at 1192.
 
 
 27
 It is important, however, to note that the Bence court was faced, in the case before it, with a concrete and, in its view, clear example of the phrase at issue having attained content which was insufficient to withstand constitutional muster. Since the phrase had been susceptible to an interpretation which violated the constitutional rights of the officer charged under it, it had not "attained a fixed and certain content" which was "constitutionally sufficient to withstand an attack on vagueness grounds." Thus, the rule at issue had, of necessity, been unconstitutionally vague.
 
 II.
 
 28
 As illustrated by Parker and Bence, there is a delicate balance to be struck in cases such as that now before us. Equally legitimate interests appear on both sides of the scale. On the one side there are the needs of institutions, such as the military and the police, which must demand a high level of discipline and duty of their members in order to function effectively for the good of all members of society. See generally Kelley v. Johnson, 425 U.S. at 245-46, 96 S.Ct. at 1444-45. On the other side is the freedom of those who serve in the case before us, those who serve in the police force. "(P) olicemen * * * are not relegated to a watered-down version of constitutional rights." Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967). To properly strike such a delicate balance requires that the competing interests be crystallized into a form more cognizable for decision than that now before us. There must be a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1936).
 
 
 29
 The instant action is not a class action. The original plaintiffs were seven individual police officers and one professional association, the St. Louis Police Officers Association.
 
 
 30
 We can find no evidence in the record to support the Association's allegations either that it is unduly restricted or that its function as an autonomous organization has been impaired by the regulations. Testimonial evidence was presented by only three of the individual plaintiffs. Two of those original plaintiffs have retired from the St. Louis police force and are no longer subject to the regulations in issue. One of them was dismissed from the case at the close of plaintiffs' evidence.
 
 
 31
 None of the plaintiffs has ever been disciplined under the regulations. The officers who testified did recall situations in which they had been inconvenienced by the rules but none of them articulated any protected activities from which they had been deterred under the regulations.
 
 
 32
 One officer recalled that he had refused an offer for secondary employment because he did not want to go through the procedure that would have been necessary under the rules. Another officer complained of having to go to his office every time he wanted to leave the city or county. The third officer who testified reported that he had been allowed to take his child to an out-of-state health clinic only on the condition that he bring back a letter from the treating physician. In regard to the requirement that officers receive permission to leave the city for any period exceeding twenty-four hours, one officer reported that he had been forced on one occasion to alter his vacation plans and another said that his vacation had cost him more money than it otherwise would have. These are the only specific examples given, in the record before us, of activities which have been, in the past, actually affected by the regulations.
 
 
 33
 The officers posit that the rules, if carried to their limits, might be enforced so as to unreasonably restrict the police officers' constitutional rights. This is undoubtedly true. However, this "hypothetical threat is not enough." United Public Workers v. Mitchell, 330 U.S. 75, 90, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). The United States Supreme Court, in dealing with the issue of justiciability in Federation of Labor v. McAdory, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1944), noted:
 
 
 34
 This Court is without power to give advisory opinions. It has long been its considered practice not to decide abstract, hypothetical or contingent questions, or to decide any constitutional question in advance of the necessity for its decision, or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, or to decide any constitutional question in advance of the necessity for its decision, or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, or to decide any constitutional question except with reference to the particular facts to which it is to be applied. (Citations omitted.)
 
 
 35
 The Missouri Supreme Court has expressed its expectation, at least in regard to the vagueness issue, that these police regulations will be administered in a manner consistent with their legitimate purpose. "We may legitimately assume that by custom, usage and 'experience' a reasonable degree of 'specificity' has been afforded in the application of the regulations involved here * * *." Milani v. Miller, 515 S.W.2d 412, 418-19 (Mo.1974). Unless we are presented with concrete evidence to the contrary, we have no reason to doubt this construction by Missouri's highest court. "Although it is possible that specific future applications * * * may engender concrete problems of constitutional dimensions, it will be time enough to consider any such problems when they arise." Seagram & Sons v. Hostetter, 384 U.S. 35, 52, 86 S.Ct. 1254, 1265, 16 L.Ed.2d 336 (1966).
 
 
 36
 Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. * * *
 
 
 37
 In the past, the Court has recognized some limited exceptions to these principles, but only because of the most 'weighty countervailing policies.'
 
 
 38
 Broadrick v. Oklahoma, 413 U.S. at 610-11, 93 S.Ct. at 2914-15 (citations omitted). One of the "limited exceptions" is made to provide extra protection to first amendment rights. Id. However, the officers have not alleged, in specific terms, either that their first amendment rights are in jeopardy or that they have been infringed.
 
 
 39
 Appellants allege that the broad sweep of the regulations chills the exercise of their constitutional rights. They have not, however, specified the kinds of activity that they desire to engage in. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm * * *." Laird v. Tatum, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972).
 
 
 40
 A federal court has no power to issue a judgment in a case unless it involves an actual controversy between adverse parties in an adversary proceeding. No exception is made for declaratory judgments.[3]
 
 
 41
 "(T)he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, " concrete legal issues, presented in actual cases, not abstractions," are requisite. This is as true of declaratory judgments as any other field. United Public Workers of America v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754, 766 (1947). The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 511, 85 L.Ed. 826, 828 (1941).'
 
 
 42
 Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 at 117 and 118 (1969).
 
 
 43
 In United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), the Supreme Court held that it could not adjudicate the claims of federal employees that the Hatch Act, which prohibits federal employees from engaging in certain political activities, was unduly restrictive. The Court found that the suit, with respect to those employees who had not yet engaged in prohibited activity, did not present a justiciable case or controversy. The Court wrote:
 
 
 44
 It would not accord with judicial responsibility to adjudge, in a matter involving constitutionality, between the freedom of the individual and the requirements of public order except when definite rights appear upon the one side and definite prejudicial interferences upon the other.
 
 
 45
 Id. at 90, 67 S.Ct. at 564 (footnote omitted).
 
 
 46
 Though the Supreme Court has relaxed somewhat its requirement that claimants must engage in prohibited activity in order to present an actual controversy, the injury still must be clearly impending. Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979); Regional Rail Reorganization Act Cases, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974); Steffel v. Thompson, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505; Dombrowski v. Pfister, 380 U.S. 479, 486-89, 85 S.Ct. 1116, 1120-22, 14 L.Ed.2d 22 (1965); Pennsylvania v. West Virginia, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923).
 
 
 47
 The Supreme Court, in United Public Workers, supra, refused to speculate about the kinds of activity the plaintiffs desired to engage in and how serious the subsequent threat of enforcement would be. 330 U.S. at 90, 67 S.Ct. at 564. We likewise avoid speculation in the instant case.
 
 
 48
 Appellants cite in their briefs to many cases where regulations, with varying degrees of similarity to those at issue here, were struck down as unconstitutional. However, not one of those cases adjudicated claims which were made in the absence of a concrete factual instance of enforcement as a framework for the court's decision.
 
 
 49
 We also wish to point out that appellants, in their briefs, have in several instances recited an incorrect standard for review of the regulations. For example, they urge that appellees must show "a compelling state interest" for each of the regulations and the appellees must provide evidence that the regulation at issue protects that interest. Appellant's brief at 21. They argue, "The government is held to a strict standard in showing that restrictions * * * must be related to the officer's performance of his duties." Appellant's brief at 22. They cite as authority the case of Bruns v. Pomerleau, 319 F.Supp. 58, 65 (D.Md.1970), which held that "(i)n order to justify a state's infringement, the state has the burden of showing a compelling or sufficiently important government interest to justify the intrusion upon the constitutional right. * * * It is '(o)nly the gravest abuses, endangering paramount interests (that) give occasion to permissible limitation.' "
 
 
 50
 However, the standard for review of police regulations was clarified in Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). The burden of proof in this case would not be with the Police Commissioners. The question that would now have to be asked is "whether (the plaintiffs) can demonstrate that there is no rational connection between the regulation, based as it is on the county's method of organizing its police force, and the promotion of safety of persons and property." Id. at 247, 96 S.Ct. at 1446.
 
 
 51
 In summary, we hold that the dispute before us is not "ripe" for judicial resolution.
 
 
 52
 (D)ifferences of opinion or conflicts of interest must be "ripe for determination" as controversies over legal rights. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.
 
 
 53
 Public Service Commission v. Wycoff Co., 344 U.S. 237, 243-44, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952). Under the dictates of Article III of the United States Constitution, we may not issue an advisory opinion in the absence of a definite and concrete controversy.
 
 
 54
 Such opinions, such advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multi-faceted situation embracing conflicting and demanding interests, we have consistently refused to give.
 
 
 55
 United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961); see Cass County v. United States, 570 F.2d 737, 739-41 (8th Cir. 1978).
 
 
 56
 In the situation here presented we are not dealing with the public at large, but with a duly constituted police force that is paramilitary in nature. As well stated in Kelley v. Johnson, 425 U.S. at 247, 96 S.Ct. at 1445:
 
 
 57
 The promotion of safety of persons and property is unquestionably at the core of the State's police power, and virtually all state and local governments employ a uniformed police force to aid in the accomplishment of that purpose. Choice of organization, dress, and equipment for law enforcement personnel is a decision entitled to the same sort of presumption of legislative validity as are state choices designed to promote other aims within the cognizance of the State's police power. Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 423, (72 S.Ct. 405, 407, 96 L.Ed. 469) (1952); Prince v. Massachusetts, 321 U.S. 158, 168-170 (64 S.Ct. 438, 443-444, 88 L.Ed. 645) (1944); Olsen v. Nebraska, 313 U.S. 236, 246-247 (61 S.Ct. 862, 865, 85 L.Ed. 1305) (1941). Having recognized in other contexts the wide latitude accorded the government in the 'dispatch of its own internal affairs,' Cafeteria Workers v. McElroy, 367 U.S. 886, 896 (81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230) (1961), we think Suffolk County's police regulations involved here are entitled to similar weight.
 
 
 58
 Again, we recognize that the regulations at issue here are cast in broad terms. We also recognize that such breadth may lend itself to excesses and arbitrariness in enforcement, but assume that these regulations will, as a matter of legitimate governmental interest, be made more specific in their individual application to concrete situations and thus be substantially limited in their administration. No excesses have been demonstrated here. No case or controversy has been pleaded. Therefore, we affirm the judgment of the district court dismissing the action for the reasons stated herein.
 
 
 59
 ARNOLD, Circuit Judge, concurring.
 
 
 60
 I think the complaint properly presents for adjudication the claim that the challenged police regulations are unconstitutional on their face. The St. Louis Police Officers Association, it seems to me, is a proper party to assert this claim on behalf of its members. I would affirm the judgment of the district court dismissing on its merits the claim of facial unconstitutionality. A state may demand of its police officers a more exacting standard of conduct than it could validly impose by criminal statute on citizens in general. It is true, as the Court says, that our task would be greatly aided if the controversy here were more concrete, but I would not hold that the courts are wholly without power to consider the validity of these regulations on the present record. In short, I would hold the regulations valid on their face, without prejudice, of course, to any later claim that they may be invalid as applied to particular persons or situations.
 
 
 
 [1]
 The Honorable James H. Meredith, Senior Judge, United States District Court for the Eastern District of Missouri
 
 
 [2]
 Articles 133 and 134, 10 U.S.C.A. §§ 933, 934 of the Code were challenged by Levy. Article 133 provides for the punishment of "conduct unbecoming an officer and a gentleman," while Art. 134 proscribes, inter alia, "all disorders and neglects to the prejudice of good order and discipline in the armed forces."
 
 
 [3]
 The Declaratory Judgment Act, 28 U.S.C. § 2201, expressly provides: "In a case of actual controversy within its jurisdiction * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (Emphasis added.)